May it please the Court, Counsel. Samuel Kaufman, appearing for Mr. Brown. I'm going to focus my comments this morning on the issue of the limiting instruction and the trial court's failure to give the instruction, counsel's failure to request it. What the Court has squarely before it here is the difficult situation where there are two separate crimes, two separate and distinct crimes that have been joined for trial and the issues inherent in that joinder. What I would like to address is how this case fits within that framework and the difficulties that are faced with, that the trial court faces in determining whether to join those cases together and then how the trial court handles that once the cases are joined. In particular regard to the cases, the leading cases from the Ninth Circuit, Bean v. Calderon and Garceau. In this case, Alvin Brown was charged with two separate crimes. The trial court found that they had similar circumstances, although one of the crimes was substantially, I would submit, more aggravated than the other. The trial court determined that the cases should be joined primarily because they shared these circumstances. However, when the evidence came in after the arguments, there was no limiting instruction given. The Court in the Ninth Circuit in Bean v. Calderon discussed the problems inherent with joining cases that have not been proven. In particular, in that case, they were talking about unproven conduct. Is Bean before or after the Effective Death Penalty Act? It was, Bean was 2001, so it would be after that. But the state court ruled that the evidence was cross-admissible, didn't it? The state court ruled that the evidence was admissible for purposes of showing identity. That's correct. So the jury was entitled to consider the evidence for any purpose? I'm sorry. I believe Bean was 1999, now that I'm triggered in my mind. I'm sorry, Your Honor. Well, the state court ruled that the evidence was admissible and could be considered. Why was that wrong? Why was it wrong to what? The state court ruled that the – your point is that the jury should have been told, don't consider the evidence or to segregate the evidence. That's correct. The state court ruled that the evidence was cross-admissible, that the jury was entitled to consider the evidence. Well, the issue is, what are they entitled to consider the evidence for? And this is – this is – when you look at the Garceau case, a case where the courts – it actually involved a prior act. It didn't involve a joinder case. You have a prior act that the court rules is admissible for a specific purpose, and the court gives a general propensity instruction. You can use this evidence for whatever you want. Ninth Circuit says that violates due process. I submit that this case is very similar to Garceau in the sense that although the court didn't give a propensity argument, the court gave – or propensity instruction, the court gave no instruction. So the court said – in essence, by its silence, said you can use this evidence for whatever you want, and the reason why this is problematic is you go back to Bean and you look at those problems inherent in joining these two cases per trial. And in particular – Here's the hurdle I think – I think at least in my mind you have to get over, accepting all of that. And I think it's your argument is that the jury should have been given some kind of limiting instruction or counsel should have requested some kind of limiting instruction. It's okay to consider it, but the fact that one crime was committed doesn't mean a propensity to commit the second. That is your argument. That's correct. In – the Bean court said these joining cases per trial where a defendant is presumed innocent, yet you're basically saying this person is presumed innocent, but, you know, here's another case to look at just in case you have a – you don't – Tell me how you get over – Presumed innocent. You're saying that's the proof. I'm sorry. Presumed innocent, but that's the proof. That's right. Tell me how you get over this hurdle. This is my concern. Garceau itself recognizes that there's no – no Supreme Court case requiring the giving of a limiting instruction in this kind of circumstance, correct? That's correct. And doesn't EBPA require that in order to take pain relief, you must be able to establish that the state court decision violated clearly established United States Supreme Court law? That's correct. And the Supreme Court has never said that a limiting instruction of the kind you suggest should have been offered be given? That's correct. How do you get over that hurdle? Well, you rely on cases that establish that improper joinder can be a due process – not improper joinder, but the improper joinder is a due process violation. What follows from that principle is that improper prejudice from the joinder that is not sufficiently limited can also be a due process violation. You don't have a Supreme Court case enunciating specifically those words, but there is a logical relationship to that. If there's no case, how can it be clearly established? Well, I believe, Your Honor, that there doesn't have to be a case that specifically enunciates those words, but if it clearly is established by a Supreme Court precedent – What's your best Supreme Court case on this point? Your Honor, I don't have one. I don't have one. The cases cited in Garceau are important, but it logically follows, we would submit. The cases like Garceau – and Garceau establishes that even though there's a proper – and that wasn't a joinder case, but even though the court can – or the jury can properly consider evidence for some purpose, what you have is a situation where there can be a fair trial, a due process violation, in the way that the court instructs the jury or the way that the court does not instruct the jury, and in this case, the court did not instruct the jury. And it's particularly important, just relying on Bean again, to look at some of the same circumstances – and again, Bean merely articulated those things that courts have to look at in prejudice. Things like whether there's a disparity in terms of the strength of the cases. That's one of the most important things. And in this case, you did clearly have a disparity in the strength of the state's cases. The one case had a victim who came into court and said, it was that guy. He did it. The other case did not have that. You had a hearsay that was not identifying Mr. Brown. So those situations, when you have a – although you could – they could be used, that evidence could be used for some purposes, where there is such a tendency to use them for improper purposes, that's a due process violation. Would you like to save some time for rebuttal? I would. Thank you. Okay. Thank you for your argument, counsel. A lawyer from the state at this time. Counsel? May it please the Court, I'm Jennifer Lloyd with the State Department of Justice. The post-conviction court correctly applied United States Supreme Court precedent in concluding that trial counsel reasonably did not request the instruction that petitioner submits should have been requested. As this Court knows, our position is, and actually the state criminal trial court found that this was evidence that was cross-admissible. The evidence of – the only issue, I think, in the second offense, the more aggravated offense where the woman was seriously injured, the only real issue at trial was identity of the defendant. And the identity evidence relating to the circumstances of that offense tied directly to the evidence connecting defendant with the other offense. He used the same car. He used the same modus operandi. The facts are substantially similar and demonstrate not that the defendant had a bad character, which is the reason for the propensity rule, but that defendant was the same – that the same person committed both of these offenses. Explain, please, the – your position on the modus operandi being the same. In one case, a person is thrown out of the car on an overpass, and another case, a person is thrown over the overpass onto the street below. Is that the same modus operandi? Well, I think that – I think that perhaps this isn't the classic signature crime where you have exactly the same acts in that part of the offense, but I think that the jurors had to look at the circumstances as a whole. And what the defendant did was prey on women who were working as prostitutes, pick them up, make a deal, then engage in some sort of sexual activity with them, and then hurt them in some way. The defendant – the first woman, all he did was shove her out of the car and take her money. The second time, he shoved her off an overpass and nearly killed her. So, no, they're not signature crimes in the sense that the acts of every offense were present in both circumstances, but the pattern is the same, and that's why the evidence was relevant, including the fact that he used the same car. The victim in the first offense actually wrote down his license plate number, and the defendant actually rented the same car before committing the second offense, and the state established that at trial. So those circumstances are what tie defendant to the crime, as well as the similarity of the events. Would it have been permissible for the state trial court to have instructed the jury – this is obviously a hypothetical question – to have instructed the jury along the lines, if you conclude that the defendant committed crime A, you may assume that he had a propensity to commit crime B?            I don't know. I don't know. I don't know. I don't know. I don't know. I don't know. Would that be consistent with due process? No. I think that would be patently improper. First of all, propensity is never at issue in a criminal case, I think it's fair to say. Oftentimes, prior acts are relevant to prove that a person actually did engage in the behavior in a different offense. Isn't there a danger that lay jurors will conclude without a limiting instruction that the judge telling them that it's cross-admissible means just that, that if there was lots of proof on crime A, they can overlook any doubts they may have about crime B because the judge said they're cross-admissible? I think it's theoretically possible, and I can't speak for all sets of circumstances. I think that if there were very little evidence in one case, if you had eyewitnesses to sexual assault in one case, eyewitnesses, confession, and DNA in one case, and then an unrelated case involved a different victim where the victim said this happened, but the state's evidence is very weak, I think that under those circumstances there is possibly a risk that the jurors are going to conclude that this person, in engaging in the second course of conduct, acted in conformity with his character as sort of demonstrated by the other offense. But here we're not talking about character. I don't think there was any risk that the jurors would conclude that simply because Mr. Brown was identified, positively identified, as the attacker in the first offense, then he's the type of person who would engage in the same type of behavior in the second offense. At least not in the absence of all of the other evidence connecting him to the crime. In this case, the instructions that were given described each offense separately, required the jurors to find beyond a reasonable doubt that defendant committed each offense, instructed them as to the separate offenses involving each victim, and I simply don't believe that it is fair to say that the post-conviction court unreasonably applied U.S. Supreme Court precedent in concluding that trial counsel was reasonable in not insisting on an instruction. Unless the Court has questions, I have nothing else to add to the brief. I don't see any other questions, counsel. Thank you for your argument this morning. Thank you. Rebuttal? Your Honor, with the Court's permission, I'd like to go back to the Court's earlier question about Supreme Court precedent, if I could. Sure. And I should clarify, the Garceau Court was actually, the Garceau decision was actually reversed by the Supreme Court, as I'm sure the Court knows, and remanded for consideration of whether a DEPA would affect the decision that the Court made, and then Mr. Garceau unfortunately died before that could happen, mooting the case. But the, and although the Garceau Court did say that there had not been a Supreme Court case expressly on point in that case, the Court did rely on cases like Spencer v. Texas and Estelle v. McGuire for the decision that they did make. I just wanted to clarify that. Okay. Thank you. All right. Thank both counsel for their arguments. The case just argued will be submitted for decision.
judges: Hawkins, Silverman, Gould